IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TIMOTHY SCOTT D.

        Plaintiff,

  v.                                    Civil Action No.
                                          1:18-CV-656 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| LAW OFFICES OF STEVEN DOLSON<br>126 North Salina Street<br>Suite 3B<br>Syracuse, New York 13202 | STEVEN R. DOLSON, ESQ. |
| FOR DEFENDANT | |
| HON. GRANT C. JAQUITH<br>United States Attorney<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, NY 13261-7198 | JUNE L. BYUN, ESQ.<br>Special Assistant U.S. Attorney |

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on April 23, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: April 25, 2019
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TIMOTHY D.,

                                        Plaintiff,

-v-                                     1:18-CV-656

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
April 23, 2019
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LAW OFFICES OF STEVEN R. DOLSON
    126 North Salina Street
    Suite 3B
    Syracuse, New York 13202
    BY: **STEVEN R. DOLSON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY: **JUNE L. BYUN, ESQ.**


*Hannah F. Cavanaugh, RPR, CSR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1                (In chambers, counsel present by telephone:  Time
2    noted:  2:22 p.m.)
3                THE COURT:  All right.  I have before me a request
4    for judicial review of an adverse determination by the Acting
5    Commissioner pursuant to 42, United States Code, Section 405(g).
6                The background is as follows:  Plaintiff was born in
7    July of 1963 and is currently 55 years of age.  He was 53 at the
8    time of the hearing and 51 years old at the alleged onset of his
9    disability on November 27, 2014.  He stands 5'7" inches in
10   height and at various times has weighed between 186 and
11   195 pounds.
12               Plaintiff lives in Albany with his wife.  They have
13   three children, but they are on their own and do not reside with
14   them.  There is some conflict in the record as to whether
15   plaintiff received or did not receive a high school diploma.  He
16   did attend 12th grade and can do basic math and can read.  At
17   281, he claimed to have received a diploma.  At page 36, during
18   the hearing, he said no and did not receive a GED.  He has had
19   vocational training with the carpenters union.  He is
20   right-handed.  Plaintiff has a driver's license, but rarely
21   drives.  He quantified that at about one time per week.  His
22   work has been limited to being a carpenter for various employers
23   since 1992.  He last worked on or about November 27, 2014.
24               Physically, plaintiff suffers from multiple
25   sclerosis, diabetes, although he testified that has had no

effect on his ability to function.  He experiences back pain and he has had testing that showed a disc protrusion and anular tear at the L4-L5 and L5-S1 region of his lumbar back.  Plaintiff suffers from hypertension, but reports no symptoms.  He has a history of a stroke, which he experienced in 2002.  He has a history of tobacco abuse, although it appears that he has now quit smoking.  Plaintiff reported that he takes Hydrocodone for his pain as needed and it provides relief.  He also takes Tylenol and Aspirin or Ibuprofen.  He uses muscle relaxers and in the past has been prescribed Tizanidine.

His primary care provider is Dr. Ara Kayayan.  He testified that he sees Dr. Kayayan approximately once per year.  That's at page 63.  The medical records show that he saw Dr. Kayayan on December 18, 2014, March 12, 2015, June 10, 2015, and February 24, 2017.  He testified that lack of insurance was one of the causes for infrequent visits.  He has also treated for his MS with neurologist Dr. Jeffrey Burdick.

Plaintiff also testified he suffers from depression and anxiety.  At one point he was on Paxil, but is no longer taking medication for any mental condition and has not had any hospitalization or therapy.  Plaintiff drinks beer.  At one point, he was consuming eight beers per day.  At the hearing, he testified he's down to two beers per day.

In terms of daily activities, plaintiff can dress himself, although he needs help sometimes with shoes and socks.

He watches television, listens to music, helps with the laundry, washes dishes, sweeps, vacuums, shops with his wife, socializes, sees his children, and sees his grandchildren.

In terms of background, plaintiff applied for Title II disability insurance benefits on March 22, 2015, alleging disability based on MS, depression, lingering symptoms from stroke, poor balance, weakness in limbs, diabetes, back injury, and arthritis in his spine. He alleged an onset date of November 27, 2014.

A hearing was conducted by Administrative Law Judge John G. Farrell with a vocational expert on March 22, 2017, to address plaintiff's application for benefits. On May 26, 2017, ALJ Farrell issued an unfavorable decision finding the plaintiff was not disabled at the relevant times and therefore ineligible for the benefits sought. That became a final determination of the agency on April 19, 2018, when the Social Security Administration Appeals Council denied plaintiff's request for a judicial review.

In his decision, ALJ Farrell applied the familiar five-step test for determining disability. After concluding that plaintiff's last date of insurance was 12/31/17, he concluded at step one plaintiff had not engaged in substantial gainful activity since November 27, 2014.

At step two, he concluded that plaintiff has several severe impairments that provide more than minimal limitation on

1  his ability to perform basic work functions, including MS,
2  diabetes, and degenerative disc disease of the lumbar spine.
3  After surveying the evidence, he concluded that plaintiff's
4  conditions do not meet or equal any of the listed presumptively
5  disabling conditions, including specifically listing 1.04.
6          Plaintiff was then assigned a residual functional
7  capacity, or RFC, of light work, except that claimant can never
8  climb ladders, ropes, or scaffolds.  Additionally, the claimant
9  can never balance.  Furthermore, the claimant can occasionally
10 climb stairs and ramps and occasionally stoop, kneel, crouch,
11 and crawl.  Lastly, the claimant has to avoid concentrated
12 exposure to hazardous machinery and unprotected heights or
13 extreme cold.
14         Applying that RFC, the Administrative Law Judge
15 concluded at step four that plaintiff is unable to meet the
16 exertional requirements of his past relevant work as a carpenter
17 and, therefore, proceeded to step five.
18         He concluded at step five, with the assistance of a
19 vocational expert, that plaintiff is capable of performing the
20 functions of a mail clerk, cashier II, and sales attendant, and,
21 therefore, was not disabled at the relevant times.  He noted
22 initially that if plaintiff had been able to perform a full
23 range of light work, a finding of not disabled would be directed
24 by Medical-Vocational Rule, or Grid Rule, 202.11, but
25 acknowledged his additional limitations would undermine and

1  erode the job base on which the grids were predicated.  He
2  concluded, therefore, that plaintiff was not disabled at the
3  relevant times.
4         As you know, my task is limited.  The standard that I
5  apply is extremely deferential.  I must determine whether
6  correct legal principles were applied and the determination is
7  supported by substantial evidence, which is generally defined by
8  the Courts as such evidence as a reasonable mind would accept to
9  support a fact.
10        The key argument here is the treating physician rule.
11 And I have say that this case I found extremely close.  I've
12 been back and forth with myself several times on this issue.
13 Ordinarily, the opinion of a treating physician regarding nature
14 and severity of an impairment is entitled to considerable
15 deference provided it is supported by medically acceptable
16 clinical and laboratory diagnostic techniques and not
17 inconsistent with other substantial evidence.  Opinions of
18 treating sources are not controlling if they are contrary to
19 other substantial evidence in the record, including opinions of
20 other medical experts.
21        The first step in the process of addressing a
22 treating source is for the Administrative Law Judge to state
23 whether the treating source is being given -- the opinions are
24 being given controlling weight.  The Administrative Law Judge in
25 this case doesn't so state, but implicit and clearly in his

1  decision is that Dr. Kayayan's opinions were not given
2  controlling weight.  The ALJ then has to determine what weight
3  to assign to the opinion and must consider the factors set forth
4  in 20 CFR Section 404.1527, including the length of the
5  treatment relationship and frequency of examination, the nature
6  and extent of the treatment relationship, the degree to which
7  the medical source has supported his or her opinion, the degree
8  of consistency between the opinion and the record as a whole and
9  whether the opinion is given by a specialist, and further, any
10 other evidence brought to the attention of the ALJ.  Reasons
11 must be given for any rejection or weight sufficient to permit
12 meaningful judicial review, although courts, including the
13 Second Circuit, in *Crowell* and *Atwater* have made it clear that
14 the Administrative Law Judge need not slavishly recite and
15 discuss each of the facts.
16        The medical source statement of Dr. Kayayan, 11F, is
17 clearly more limiting than the RFC.  Dr. Kayayan clearly
18 qualifies as a treating source, but I do find minimally, and as
19 I indicated in the oral argument, it would have been wonderful
20 if the Administrative Law Judge had recited the factors and
21 discussed how they applied in this case more clearly.  It
22 appears to me that the Administrative Law Judge did first
23 discuss the medical records, including opinions from Dr. Puri,
24 Dr. Burdick, Dr. Kayayan, as well as plaintiff's hearing
25 testimony, so the length and frequency of treatment relationship

1  is discussed. And, yes, there is some disagreement as to
2  whether Dr. Kayayan was seen once per year or not, but if you
3  factor in that it was four times from December 2014 to
4  February 2017, it's not a significant difference.
5         It's not specifically noted, but it's clear that Dr.
6  Kayayan is a general practitioner, whereas Dr. Burdick, whose
7  opinions are contrary, is a specialist, a neurologist. The
8  nature and extent of the treatment relationship is considered.
9  The degree to which it is supported by medical evidence, I
10 think, is implicit.
11        First of all, this is a check the box form, which is
12 less persuasive than narrative forms. There's little narrative
13 to support Dr. Kayayan's opinions. Dr. Kayayan's opinions are
14 inconsistent in a couple of regards with plaintiff's testimony.
15 They are clearly inconsistent with Dr. Burdick's and Dr. Puri's
16 opinions. I was disappointed that when Dr. Puri's opinion and
17 when Dr. Burdick's opinion were given some weight, the
18 Administrative Law Judge did not specifically say in what regard
19 those opinions were rejected. I think it would have been
20 helpful to a meaningful judicial review, but I don't find it so
21 erroneous to require reversal.
22        The testimony of the plaintiff in this case was that
23 he believed he could do light work with medications. Dr.
24 Burdick opines that there are no limitations in plaintiff's
25 ability to perform work. The plaintiff's light work, as the

1  regulations provide, involves lifting no more than 20 pounds at
2  a time and frequent lifting and carrying of objects weighing up
3  to 10 pounds.  That is consistent with plaintiff's hearing
4  testimony.
5         You -- in order to perform light work, it requires a
6  good deal of walking and/or standing.  The testimony was that
7  plaintiff could walk and stand one hour at a time.
8  Unfortunately, during the hearing, he wasn't asked how long he
9  felt he could walk and stand in an eight-hour day, but
10 nonetheless, I think that in general the hearing testimony is
11 consistent with Dr. Burdick's and Dr. Puri's opinions and
12 inconsistent with Dr. Kayayan's.
13        Again, I think it could have been more clearly
14 stated.  I wish Administrative Law Judges would do so.  In my
15 experience, they don't faithfully adhere to and fulfill the
16 requirements of outlining exactly how they come down on the
17 factors to be considered and the treating source opinion, but I
18 understand the pressures of the volume that they face.
19        In terms of the heat component of the RFC, clearly
20 Dr. Puri and Dr. Burdick did suggest the possibility of
21 limiting.  I think Dr. Burdick specifically said it is possible
22 that heat would exacerbate the plaintiff's condition.  Plaintiff
23 did testify, albeit I agree with plaintiff's counsel that it was
24 rather vague, at page 62, that heat not appear to bother him.
25 The -- so I think the failure to include heat in the RFC,

bearing particularly in mind that it is the plaintiff who bears the burden of proof at the RFC level, is supported by substantial evidence.

In sum, I find that the ALJ weighed available evidence. It was up to the ALJ to determine what weight to be given to each of the medical opinions. There's no indication from the record as far as I can see that no reasonable factfinder would have arrived at the conclusion reached by the Administrative Law Judge.

At step five where the Commissioner bears the burden, a hypothetical was presented to the vocational expert that approximated the RFC finding, which I find is supported by substantial evidence, and, therefore, based on the vocational expert's testimony, the Commissioner carried her burden of showing available work in the national economy that can be performed by the plaintiff.

So in sum, I will grant judgment on the pleadings to the defendant and will issue a short form order memorializing my determination.

Thank you both for excellent presentations.

MR. DOLSON: Thank you, Judge.

MS. BYUN: Thank you, Judge.

(Time noted: 2:39 p.m.)

HANNAH F. CAVANAUGH, RPR, CSR
Official U.S. Court Reporter

1
2        CERTIFICATE OF OFFICIAL REPORTER
3
4
5        I, HANNAH F. CAVANAUGH, RPR, CSR, Official U.S.
6   Court Reporter, in and for the United States District Court for
7   the Northern District of New York, DO HEREBY CERTIFY that
8   pursuant to Section 753, Title 28, United States Code, that the
9   foregoing is a true and correct transcript of the
10  stenographically reported proceedings held in the above-entitled
11  matter and that the transcript page format is in conformance
12  with the regulations of the Judicial Conference of the United
13  States.
14
15             Dated this 25th day of April, 2019.
16
17             x *Hannah F. Cavanaugh*
18             HANNAH F. CAVANAUGH, RPR, CSR
19             Official U.S. Court Reporter
20
21
22
23
24
25